IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RAMON BANUELOS-ROMERO | § | |
| | § | |
| v. | § | 2:10-CV-0182 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION**
**TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant RAMON BANUELOS-ROMERO has filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. For the reasons hereinafter expressed, the undersigned Magistrate Judge is of the opinion defendant's claims are without merit and recommends the Motion to Vacate be DENIED.

I.
STATEMENT OF THE CASE

On November 11, 2008, at approximately 10:20 a.m., Department of Public Safety (DPS) Trooper Ben Dollar was patrolling on Interstate Highway 40 (I-40) when he observed defendant's 2004 Mercury Marquis traveling at a speed substantially below the posted speed limit, and observed the vehicle "unexplainably cross the fog line and the rumble strips until more than half of it was traveling" on the roadway's right improved shoulder. The trooper made a traffic stop of defendant's vehicle for the offense of driving on an improved shoulder[1] and to investigate whether

---

[1] Under Texas law, "An operator may drive on an improved shoulder to the right of the main traveled portion of the roadway if that operation is necessary and may be done safely, but only:

the driver might be impaired in some manner, *i.e*., intoxicated or fatigued. The trooper did not observe any of the statutory exceptions to be present at the time he observed defendant driving on the shoulder of the road. Defendant BANUELOS-ROMERO was the driver of the car and had one female passenger.

While conducting the traffic stop, the trooper noticed the very strong odor of silicone emitting from inside the vehicle, and when he leaned against the windshield, he unwittingly got fresh silicone on his hand. The trooper examined the car more closely, noticing the windshield had been recently replaced and that silicone was all over the sides of the windshield.

The defendant consented to a search of the vehicle, however, no significant additional evidence was uncovered by the trooper during a roadside search.[2] Upon the trooper's request, the passenger followed the trooper in the vehicle to a DPS location where the vehicle's windshield was removed, revealing a large quantity of methamphetamine hidden inside the space between the car's firewall and engine.

On November 17, 2008, defendant was charged by complaint, in the Northern District of Texas, Amarillo Division, with the offense of possession with intent to distribute "500 grams or more of a mixture and substance containing a detectable amount of methamphetamine." *United States v. Banuelos-Romero*, 2:08-MJ-073. Defendant retained counsel to represent him. On

---

(1) to stop, stand, or park;
(2) to accelerate before entering the main traveled lane of traffic;
(3) to decelerate before making a right turn;
(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
(5) to allow another vehicle traveling faster to pass;
(6) as permitted or required by an official traffic-control device; or
(7) to avoid a collission.

7 Texas Admin. Code § 545.058 (1999).

[2]The district judge, based on the undersigned's recommendation, subsequently found defendant had not voluntarily consented to the search due to issues involving English/Spanish interpretations.

December 10, 2008, defendant was charged by indictment with the same offense. *United States v. Banuelos-Romero*, Cause No. 2:08-CR-0080. Counsel filed several pre-trial motions, including a motion to suppress. On February 19, 2009, the Court denied the motion to suppress, finding the trooper made a proper traffic stop because (1) the trooper had reasonable suspicion defendant had committed a traffic violation, and (2) had sufficient reasonable, articulable suspicion the driver might be impaired. The court also found that even though defendant's consent to search the car was not voluntary, probable cause justified the search of the car.

On February 20, 2009, defendant pled guilty to the possession with intent to distribute methamphetamine offense as charged in the indictment. Pursuant to a Plea Agreement, defendant stipulated to the accuracy of the Factual Resume, acknowledged his plea of guilty was freely and voluntarily made, and stated that after thoroughly reviewing all legal and factual aspects of this case with his lawyer, he was fully satisfied with his lawyer's legal representation. Defendant averred he had "received from his lawyer explanations satisfactory to him concerning each paragraph of this plea agreement, each of his rights affected by this agreement, and the alternatives available to him other than entering into this agreement," and that after conferring with his lawyer, concluded it was in his best interest to concede he was guilty, enter into the plea agreement, and plead guilty rather than proceed to trial. Defendant reserved the right to appeal the Court's denial of the motion to suppress. Defendant confirmed the agreement in open court at his rearraignment and guilty plea hearing.

The Court accepted defendant's plea and plea agreement and ordered a Presentence Investigation Report (PSR). A PSR was prepared and recited the drugs found in the car tested positive for methamphetamine and had a net weight of 2,507 grams, with a 97.2% purity level,

which calculated to 2.436 kilograms of actual methamphetamine.  The PSR calculated defendant's base offense level at 38 based on his offense involving 1.5 kilograms or more of methamphetamine (actual).  The PSR awarded defendant a 3-level reduction based on his acceptance of responsibility, resulting in a total offense level of 35.  With defendant's Criminal History Category of I, the PSR set an advisory guideline range of 168 to 210 months.  Counsel for defendant filed objections to the PSR, primarily arguing defendant had provided sufficient information to the government to qualify for a 2-level reduction of the base offense level under the "safety valve" provision of USSG § 5C1.2.

On April 30, 2009, the Court conducted the sentencing hearing.  During the hearing, defense counsel argued he qualified for the 2-level "safety valve" reduction which would reduce his guideline range to 135 to 168 months.  In support, defense counsel presented testimony from DEA Special Agent Shane Reese who debriefed defendant, as well as from defendant himself.  The District Judge overruled defendant's objections, specifically finding the safety valve provision did not apply in this case.  Sentencing Tr. at 33-37.  The District Judge then sentenced defendant to a term of 168 months imprisonment (the bottom of the advisory guideline range), explaining:

> Now, I've set your penalty at 168 months.  The Court has considered your lack of criminal history, but the Court has set that penalty and *would have set the same penalty if the Court had found that the safety valve applied.*  The Court would have set 168 months as your penalty because of the fact that you were transporting such a large amount of drugs that had an extremely high level of purity and because of, regardless of what you've done later on, you were not forthcoming initially.

Sentencing Tr. at 46 (emphasis added).

Pursuant to his reservation of the right to appeal the denial of his motion to suppress, defendant timely appealed his conviction and sentence.  On February 22, 2010, the Fifth Circuit Court of Appeals affirmed defendant's conviction, finding law enforcement had probable cause to

search defendant's vehicle. *United States v. Banuelos-Romero*, 597 F.3d 763 (5th Cir. 2010).

On July 28, 2010, defendant filed this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Attached to defendant's motion was defendant's sworn affidavit dated July 23, 2010. On September 20, 2010, the government filed a response in opposition to the motion to vacate. On December 27, 2010, petitioner filed a reply to the government's response, as well as a memorandum in support of his 2255 motion.

## II.
## DEFENDANT'S ALLEGATIONS

Defendant appears to present the following claims in support of his motion:

1. Defendant's guilty plea was not knowing and voluntary because counsel failed to argue, in his motion to suppress, that the initial stop of his vehicle was violative of the Fourth Amendment. Specially, defendant contends counsel should have argued:

    A. Defendant's driving on the shoulder of the road was not a traffic violation because he was forced out of his lane by a truck; and

    B. The stop was pretextual because the trooper stopped defendant's vehicle solely because of the make and model of the car.

2. Defendant was denied his constitutional right to effective assistance of counsel because trial counsel failed to:

    A. seek dismissal of the indictment based on the government's knowing use of false testimony before the grand jury; and

    B. object to the PSR's calculation of the base offense level based on an erroneous drug quantity.

3. Newly discovered evidence entitles defendant to a new trial.

III.
VOLUNTARINESS OF PLEA/ EFFECTIVENESS OF COUNSEL

Defendant claims his guilty plea was involuntary based on defense counsel's alleged failure to argue what defendant contends were valid pre-trial defenses, *i.e.*, grounds which, if raised in defendant's motion to suppress, would have been successful. Defendant appears to argue that had counsel presented these arguments, the evidence against him would have been suppressed and defendant would not have entered a guilty plea.

A guilty plea is a waiver of certain constitutional rights; thus, a defendant must make it intelligently and voluntarily for it to be effective. *See Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "[A defendant] who does not receive reasonably effective assistance of counsel in connection with his decision to plead guilty cannot be said to have made that decision either intelligently or voluntarily." *Cf. United States v. Cavitt*, 550 F.3d 430, 440–41 (5th Cir. 2008) (holding that a lawyer's duty is to provide the client an understanding of the law and to give competent advice, and that if the lawyer is unfamiliar with the relevant facts and law, the client's guilty plea cannot be knowingly and voluntarily made because it will not represent an informed choice). Here, defendant does not appear to argue he was not provided an accurate understanding of the law by his counsel, was given incompetent advice, or was misadvised at the time he entered his guilty plea. Instead, defendant appears to argue his guilty plea was involuntary because counsel did not make certain arguments regarding the motion to suppress. The defendant, however, was aware, <u>at the time he pled guilty</u>, that his counsel had not made the arguments he has identified in the motion to vacate. Knowing of these arguments and being aware that they had not been made when he entered his guilty plea constitutes a waiver of such claims. *See United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008) (a voluntary and unconditional guilty plea

waives all non-jurisdictional defects). Moreover, in the written plea agreement, defendant averred he was completely satisfied with counsel's representation and, in open court at rearraignment, averred no one had threatened or tried in any way to force him to plead guilty. Defendant's present contention, that counsel's pre-trial performance was deficient and but for these deficiencies he would not have pleaded guilty, is contradicted by the trial court record. Further, even if these claims had not been waived, and considering them as claims of ineffective assistance of counsel with defendant's claims raised by his second ground, no relief is warranted.

The proper standard for judging a defendant's contention that he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* standard, a defendant must show counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to a criminal defendant by the Sixth Amendment to the United States Constitution. In order to amount to ineffective assistance of counsel, counsel's performance must have fallen below an objective standard of reasonableness as determined by the norms of the profession. Counsel's performance is reviewed from counsel's perspective at the time of trial, not from hindsight. *Id.* at 689. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*

A defendant must also show he was prejudiced by counsel's deficient performance. To establish this prong, defendant must "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different or that the errors were so serious as to deprive the defendant of a fair trial with a reliable result." *Id.* at 694. In the context

of a guilty plea, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To prove prejudice due to any error counsel committed at sentencing, defendant must show there was a reasonable probability that, but for counsel's action, he would have received a lower sentence. *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004).

### A. Whether the Initial Stop was Justified

Defendant first faults counsel for arguing the evidence against him should have been suppressed only on the basis that the stop resulted in a prolonged detention. Specifically, defendant argues counsel was deficient because he did not challenge the initial traffic stop, arguing the stop was not justified because the trooper did not have "probable cause" to believe a traffic violation had been committed. Specifically, defendant argues "law enforcement knew that an oversized semi-truck created an emergency situation that prompted and authorized defendant to drive on the improved shoulder." Defendant appears to argue that if counsel had presented evidence that a truck forced defendant onto the right shoulder of the road where the trooper observed him driving, and had counsel argued these facts met an exception to the statute, that the Court would have found no traffic violation had occurred and would have found the initial traffic stop invalid. Defendant appears to contend counsel's failure to make this argument and present evidence supporting this claim was deficient, and that he was prejudiced because the evidence found after the stop would have been suppressed.

Defendant's present contention is without merit because there is no evidence any "oversized semi-truck" created any emergency as described by defendant. In addition, in his motion to

suppress, counsel did argue the traffic stop was an illegal stop, made without probable cause or reasonable suspicion. The motion specifically noted "[n]o person witnessed the Defendant commit an offense" so as to justify the stop. At the suppression hearing, defense counsel again argued the trooper did not have a legal basis for initially stopping defendant.

Second, at the hearing, counsel elicited testimony from defendant that he had changed lanes (was driving in the inside passing lane) and reduced his speed because "there was an officer that had a truck stopped" on the right side of the highway. Defendant also testified that the trooper's testimony that he observed defendant's vehicle "crossing over the white fog lane with [his] right side tires" was not true. Suppression Tr. at 224-25. To support defendant's anticipated testimony, counsel first called an expert witness who testified the trooper could not have observed defendant drive onto the shoulder as the trooper testified. See Suppression Hearing Tr. at 136-223. Based on defendant's version of the facts and sworn testimony, it was the defense's position that defendant was legally in the inside passing lane, did not cross over onto the right shoulder of the roadway and, consequently, that the trooper did not observe any traffic offense, thus the stop was not justified from its inception. Defendant now argues counsel was deficient for not also presenting, during the suppression hearing, a contradictory position that defendant did, in fact, drive on the right shoulder of the roadway because he was forced to do so by a truck. Counsel was not deficient for failing to argue conflicting positions and for not contradicting defendant's sworn testimony at the hearing.

Further, defendant cannot show prejudice. Defendant has provided no probative support showing he was forced onto the shoulder of the road by a truck. Any such unsupported argument made by counsel at the suppression hearing, would have been completely contradicted by the trooper's testimony. More importantly, this Court found that even if the trooper did not have reasonable suspicion to stop defendant for a violation of state law, he still had sufficient reasonable,

articulable suspicion the driver might be impaired.  That safety factor and concern would have been sufficient to justify an investigative stop.  Defendant has not shown that had counsel made the contradictory argument now presented, that such argument would have benefitted defendant in any way, much less that such argument would have resulted in the Court suppressing the incriminating evidence.  Since defendant has not shown the result of the proceeding would have been different if counsel had made the contradictory argument that a truck forced defendant to the shoulder of the road, defendant has not demonstrated he was prejudiced by the failure of counsel to make such an argument.  Defendant's first ground should be denied.

### B. Was the Traffic Stop Pretextual?

Defendant next argues his guilty plea was involuntary because counsel failed to investigate and present the argument that the only reason Trooper Dollar stopped defendant's vehicle was because of the make and model of the car.  Defendant contends a "dispatcher's report" would have shown the trooper had recently stopped other vehicles of the same make and model defendant was driving, and that those stops had resulted in the discovery of illegal narcotics in a compartment that exists in such vehicles.  Defendant appears to argue such evidence would have demonstrated the trooper's stop of defendant's vehicle was purely pretextual, and that if counsel had made this argument during the suppression proceedings, it would have resulted in the Court suppressing the evidence.

Defendant fails to provide any factual or legal support for his allegation that the trooper's stop was pretextual.  While there was testimony that other cars of the same make and model defendant was driving had been used to transport drugs, there is no evidence indicating the trooper stopped defendant's vehicle based solely on the type of car he was driving.  In fact, the trooper's

sworn testimony was that he observed defendant driving with his wheels on the shoulder of the road, and effected a stop of the vehicle because he believed this manner of driving was a violation of state traffic laws and to investigate whether the driver might be impaired. This Court found the trooper had reasonable suspicion to stop the vehicle for a state traffic law violation, as well as sufficient reasonable, articulable suspicion to support an investigative stop. Even if the make and model of defendant's vehicle was a consideration in the trooper's decision to effect the stop, such would not have made the initial stop illegal as a pretextual stop because the trooper's testimony stated valid reasons for the stop. Defendant has not shown counsel was deficient for failing to argue the initial stop of defendant's vehicle was violative of the Fourth Amendment because it was a pretextual stop, nor has he shown any such argument would have resulted in the suppression of incriminating evidence against him.

Defendant has failed to show counsel failed to adequately investigate and/or present grounds for suppression of the evidence. Defendant has not shown a reasonable probability that had counsel presented these arguments, they would have been successful. Moreover, defendant has not shown that had counsel presented these arguments, even if unsuccessful, he would have not pled guilty but would have elected to go to trial. The validity of the initial stop was not a question that would have been presented to a jury. Defendant's guilty plea was entered knowingly and voluntarily because counsel properly presented all viable defenses and properly advised defendant concerning his guilty plea. Defendant received reasonably effective assistance of counsel in connection with his decision to plead guilty. Defendant's claim of an involuntary guilty plea due to the ineffectiveness of his counsel is without merit and should be DENIED.

C. <u>The Indictment</u>

Defendant contends counsel was ineffective for failing to challenge and seek dismissal of "the indictment . . . on the basis that the prosecution [] obtained the indictment through its improper use of knowing and intentionally false testimony of United States Drug Enforcement Administration (DEA) Special Agent Shane Reese, and Department of Public Safety (DPS) Trooper Ben Dollar." Defendant appears to argue that had counsel made such an argument, the Court would have dismissed the indictment against him.

Defendant has only presented his conclusion that false statements were made. He has failed to show either Special Agent Reese or Trooper Dollar presented false testimony before the grand jury, or that the government knew of any false evidence which was presented to the grand jury. Defendant fails to show counsel was deficient in failing to make this unsupported argument to the Court, or that if such conclusory argument been made, the Court would have dismissed the indictment against defendant. As defendant has not shown counsel was deficient or that any deficiency on the part of counsel prejudiced defendant, this claim of ineffective assistance of counsel should be DENIED.

D. <u>Base Offense Level Calculation</u>

Defendant next contends counsel was deficient for failing to object to the Presentence Report base offense level calculation which held defendant accountable for 2.4 kilograms of methamphetamine (actual) and assessed defendant a base offense level of 38. In his motion to vacate, defendant argues the government "only submitted evidence of an amount of less than 3 kilograms of methamphetamine, which requires an offense level of 34." Defendant contends counsel was deficient for failing to object to the base offense level calculation, and that defendant

was prejudiced by counsel's failure to so object.

USSG § 2D1.1(c) specifically states possession of "1.5 KG or more of Methamphetamine (actual)" results in a base offense level of 38, not 34 as defendant argues.  Counsel had no valid basis to argue otherwise.  Counsel is not required to make frivolous arguments or objections. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

In his reply to the government's answer, defendant argues counsel should have objected to the base offense level calculation on the grounds that the government only proved, "at best," that defendant possessed 3 but less than 5 KG of "simple" methamphetamine, which carries a base offense level of 34.  Defendant appears to argue he was instead assessed the base offense level of 38 for possessing 2.4 KG of "Ice" rather than 2.4 KG of actual methamphetamine, and that counsel was deficient for failing to object on the ground that there was no evidence to support a finding that defendant possessed this form of methamphetamine.  Defendant's argument is without basis as the base offense level calculation was based on the actual amount of methamphetamine found in the substance defendant possessed (as opposed to the total amount of the mixture containing methamphetamine and other additives), not on a finding that the methamphetamine was in the form of "Ice."  Again, counsel had no valid basis on which to argue otherwise and is not required to make frivolous objections.

If it is defendant's claim that the chemical analysis was flawed in some manner, or that the identification of the controlled substance as methamphetamine or the calculation of its weight was erroneous, defendant has failed to submit any evidence showing such.  Defendant has not shown counsel was deficient for failing to object the base offense level calculation in the PSR, or that defendant was prejudiced by any failure to object.  Defendant's claim of ineffective assistance of counsel on this basis should be DENIED.

IV.
NEWLY DISCOVERED EVIDENCE/ NEW TRIAL

In his last ground, defendant contends he is entitled to a new trial based on newly discovered evidence. Defendant points to a May 21, 2010 letter he received from the United States Attorneys Office which identified materials that could constitute impeachment evidence with regard to Agent Reese. Defendant pled guilty to the charges and there was no trial as to guilt or innocence. However, a sentencing hearing was conducted to hear defendant's objections to the PSR and set defendant's sentence. During the sentencing hearing, Agent Reese was called to testify solely on the issue of whether defendant was entitled to "safety valve" relief under USSG § 5C1.2. Reece's testimony was limited to the degree defendant cooperated with the government during a debriefing. *See* Sentencing Tr. at 9-32. After Reese and defendant testified, the Court sentenced defendant to 168 months' imprisonment and the Court specifically noted it "would have set the same penalty if the Court had found that the safety valve applied" due to the amount of drugs and the level of purity. Consequently, even if it is assumed the "newly discovered" impeachment material had been available and utilized at the hearing, had caused the Court to discount Agent Reese's testimony, <u>and</u> even if the Court had found defendant was entitled to "safety-valve" relief, the record is clear the District Judge would have still imposed the 168-month sentence assessed. Defendant's sentence would not have been affected by any "newly discovered" evidence, and defendant is not entitled to relief. This claim should be denied.

V.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by

a Person in Federal Custody filed by defendant RAMON BANUELOS-ROMERO should be

DENIED.

## VI.
### INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 30th day of April 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©, or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).